(108 App. Div. 185)

In re HAWLEY et al.

(Supreme Court, Appellate Division, Fourth Department.   October 18, 1905.)

1. EXECUTORS AND ADMINISTRATORS—MANAGEMENT OF ESTATE—PAYMENT OF DEBTS—INTEREST—CREDITS.

   Testator, after directing that his debts be first paid, declared that $4,000 should be set aside and the income paid to his wife for life, and then bequeathed to his son, H., $200, to be paid, without interest, six years after the testator's death, together with the use for six years of all of his property, including the $200, remaining after setting apart the $4,000 for the widow, and named the widow and H. as executors.   There was not sufficient personal property to pay the debts and set aside the $4,000 for the widow.   *Held*, that H. was not entitled, in order to prevent an immediate sale of the real estate, to pay the debts of the testator out of the executor's personal funds and then charge interest thereon against the estate until he was reimbursed from a subsequent sale of the real estate.

2. SAME—INVESTMENTS.

   Where testator provided that, after the payment of his debts, $4,000 should be set apart and the income paid to the widow, and that his son, H., should have the use of the balance of his property for six years, etc., the widow and H. being named as executors, an arrangement between H. and the widow by which it was agreed that $3,000 of the personal estate were to remain in the note of H., which he owed the estate, and that he should pay her the income of $1,000 worth of real estate, which should remain invested therein, there being an insufficiency of personal property to set aside the $4,000, was unauthorized by the will and unsustainable.

3. SAME—PAYMENTS TO WIDOW.

   Where a will provided that after the payment of debts there should be set apart from the estate $4,000, to pay the income to the testator's widow for life, and, there being an insufficiency of personal estate to set apart such sum without a sale of real estate, the widow, who was one of the executors, agreed with the other that $3,000 of the personal estate should remain in the executor's note, and that he was to pay her the income on $1,000 worth of the real estate, which should remain invested therein, in order to prevent a present sale of the real estate, the executors were not entitled to pay to the widow an amount out of the principal of the avails of the subsequent sale of the real estate, in order to make up the full income of $4,000 to which she was entitled, but which she had not received.

Appeal from Surrogate's Court, Monroe County.

Judicial settlement of the account of Nora C. Hawley and George N. Hawley, as executors of the will of William S. Hawley, deceased. From a surrogate's decree disallowing the executors certain items credited in their account, they appeal.   Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and HISCOCK, JJ.

Clarence W. McKay, for appellants.

J. W. Barrett, for respondents.

Walter I. Scott, special guardian, for infant respondents.

SPRING, J.   William S. Hawley died August 22, 1898, leaving a last will and testament and a codicil thereto, which were duly admitted to probate.   By the provisions of the will, as altered by the codicil, the executors were first directed to pay the debts and funeral expenses of the testator, then to "set apart" from his estate $4,000, and pay the

income thereof to his wife during her natural life or until her remarriage. He also bequeathed to his son, George N. Hawley, $200, to be paid, without interest, six years after the decease of the testator, and also gave the use for six years to his said son of all his property, including said $200, remaining after the setting apart of the $4,000 to the widow, and subject to the payment of certain sums annually to his three other children. The will further provided that when the property was converted into money certain general legacies were to be paid, and the balance divided equally among his children or their decendants. The widow and the son, George N., were named executors, and were given the usual power of sale, and at the election of George the executors were permitted to convert the property into money before the expiration of the six-year period.

An intermediate accounting was had by the executors in December, 1899, by which it appeared that a note of $1,000 and interest thereon since November 1, 1896, held by one Pinkney, remained unpaid, and also a note of $100 and interest, owned by Nora C. Hawley, the executrix. It also appeared that there was a note of $3,000 against the executor George Hawley, which comprised the personal estate then remaining. The decree directed that this note be collected within 30 days, and the avails invested in good real estate securities, or, if that could not reasonably be made within 30 days, that said money be deposited in some savings bank in the city of Rochester; and these directions were complied with. On that accounting there was, of the personal estate on hand after the payment of the expenses of the accounting, the sum of $2,729.40, and the two notes against the testator were still unpaid. The decree directed the investment of this personal estate pursuant to the will, in order that a fund might be provided to furnish an income for the widow. The executor, Hawley, paid the Pinkney note, with the accumulated interest, December 29, 1900, from his personal funds, and the note of Mrs. Hawley was not paid until October 1, 1904, and on the sale of the real estate more than six years after the death of the testator.

The executors credited in their account in the present proceeding the interest on the sum paid on the Pinkney note from the date of its payment to October 1, 1904, which item was disallowed by the surrogate. It will be observed that the executors postponed the payment of the Pinkney note for more than two years after the death of the testator, although during all the time from the commencement of their trust duties they had ample personal property in their possession to pay this note, and the surrogate disallowed the interest which had accrued after one year from the time letters were issued to them, and also the interest paid on the Nora Hawley note after such time. It will be noted, also, that the fund set apart to meet the annual payments to the widow did not amount to the sum of $4,000, and after the sale of the real estate the executor paid to her $285.89 out of the principal of the avails of the sale. This payment is sought to be justified on the ground that she had not received the full income to which she was entitled. This item was also disallowed.

We concur with the conclusions reached by the learned surrogate as to these three items. The widow and the son are larger beneficiaries

of the will.   The estate was tied up for six years, principally for the benefit of the son, George.   His mother lived with him, and apparently they were managing the estate together and for their mutual advantage.   It was their duty as executors first to pay the debts of the testator, and he especially commanded them to do so.   If these debts had been paid, the income-bearing estate would have been depleted to that extent, which would have carried also a diminution of the income to George N.   It was a shrewd device of his to invest all the personal estate for the benefit of the widow, pay the Pinkney note himself, receive all the income from the balance of the estate, and, after the land was sold, credit himself with the interest on the note which he had paid.

The scheme designed by the will, as suggested, was in the first instance to pay the debts of the testator, then to have invested and set apart the sum of $4,000, the interest of which was to be paid to the widow.   If the personal estate was inadequate to provide this fund, the real estate could then be resorted to for that purpose.   The real and personal estate remaining after this sum was segregated for the benefit of the widow was to pass to George N. for six years.   The primary intention was to provide for the widow.  · George could not receive the income from the real estate and use it for his own benefit, and then clear himself because there was not sufficient personal property to pay the widow the annuity.   The authority that at his election he might have the real estate sold within six years was to insure the income on a fixed sum to the widow.

Evidently Mrs. Hawley and her son were willing to allow the land to remain intact during the six-year period, and then have·George pay to his mother sufficient to make up the deficiency caused by the inadequacy of the personal estate.   In the accounting filed in 1899 the executors stated that by any arrangement satisfactory to Mrs. Hawley the $3,000 of the personal estate were to remain in George's note, and he was to pay her annually "the income on $1,000 worth of real estate, which is to remain invested therein."   The note investment was contrary to the direction of the testator, and the decree of the surrogate's court required that the note be paid and the avails invested conformably to the testator's intention.   There was no further personal estate, and these executors, possibly in pursuance of their "arrangement," preferred that George should pay to the widow "the income on $1,000 worth of real estate," rather than dispose of that property.

The ·fact that the decree of January, 1900, directed that the avails of the note, after paying the expenses of administration, be invested in real estate securities, is no estoppel on the respondents, and did not operate to alter the provisions of the will or interfere with the orderly administration of the estate.   These executors had reported their "arrangement" to the court, and the decree simply directed that, instead of keeping this personal estate in the note, they must invest it as the will required.   The surrogate did not intend to decide that Nora and George Hawley might receive all the income of the entire property for their own use, pay the estate obligations out of their own funds, and on the judicial settlement of the estate receive the interest on the debts so paid out of the corpus of the estate.   The income to them was not

expected to commence until after the debts of the testator had been paid. Their duty to pay these debts out of the personal estate was plain and unmistakable. Their duty clashed with their personal desires, and, as often happens, duty was submerged in the collision. So, the executors having failed to secure to Mrs. Hawley the income on the $4,000, they could not, upon the sale of the land, charge up the claimed deficiency to the principal. It was only from the income she was to be paid. Whether the sum to be set apart was intended to be confined to the personal estate, or included in its scope whatever property the testator left, is unimportant; for in any event the corpus was not to be diminished to pay her annual stipend.

The key to the conduct of these executors is found in the fact that they were living together and managing the estate, apparently, not for the benefit of all concerned, but to further their own interests. The widow did not attempt to secure the fixed sum intended for her benefit. She acquiesced in the "arrangement," which made George her paymaster, and kept the real estate under his control. By her remissness or active participation in his course she may have failed to receive her full income; but George, not the estate, is liable to her. The surrogate was very liberal to George Hawley in allowing him the interest on the debts against the estate for the year after the issuance of the letters. During that year he received all the income for the benefit of himself and his mother, although it was not expected that the earnings of the estate would accrue to them until after the debts had been paid.

The decree of the Surrogate's Court, so far as appealed from, should be affirmed, with costs and disbursements of this appeal against the executors personally. So ordered. All concur.